*808 OPINION OF THE COURT
Louis Sangiorgio, J.
This is a special proceeding styled in the nature of a combined CPLR article 78 proceeding and an action for a declaratory judgment.
This litigation, and prior proceedings before the Freshwater Wetlands Appeals Board (hereinafter FWAB) concern the designation of a certain parcel of property by the respondents Commissioner Jorling and the Department of Environmental Conservation (DEC) as a freshwater wetlands (ECL art 24).
Jacob and Madeline Agai commenced an appeal before FWAB (Index No. 87-43) challenging the designation of the subject property* as a freshwater wetlands. At the time of the appeal, the Agais were the owners of record of the property. However, A. Romi Cohn, one of the petitioners herein, sought substitution for the Agais, asserting that he was the real party in interest. Mr. Cohn is the sole owner of copetitioner Romeo Planning and Development Corporation, which possessed a mortgage on the subject premises. Romeo commenced foreclosure proceedings against the Agais, the mortgagors, when they defaulted. Romeo obtained summary judgment of foreclosure and an order of reference to compute the amount due on December 15, 1986. The actual sale did not take place until November 18, 1987, and the successful bidder was Cohn’s wife, who assigned her rights to Corom Development Corp., a copetitioner herein.
Cohn’s request for substitution was denied by FWAB by decision and order dated July 12, 1990, on the ground that Mr. Cohn lacked standing because he was not an owner of the property as of January 1, 1987. This litigation ensued.
In the court’s view, this proceeding presents several issues for resolution, as it concerns ECL 24-1104, the statute in question.
1. Did the mortgage foreclosure of December 15, 1986 cut off the Agais’ interests as the owners of the property?
Under an ordinary judgment of foreclosure of a mortgage, the right and interest of a defendant becomes barred and foreclosed not upon the date of entry of judgment, but from and after the sale of the premises and the conveyance made *809 thereunder (Nutt v Cuming, 155 NY 309; Dulberg v Ebenhart, 68 AD2d 323). Generally, title to the mortgaged premises and all rights incident and attendant thereto passes to the purchaser at the foreclosure sale at the moment of delivery of the deed executed by the officer appointed to conduct the sale (see, Cheney v Woodruff, 45 NY 98; Central Hanover Bank & Trust Co. v Boccia, 244 App Div 106 [2d Dept]; 15 Carmody-Wait 2d, NY Prac § 92:305).
Consequently, the assignee of the purchaser at the foreclosure sale, Corom Development Corp., did not have an interest in the property as of the effective date stated in the statute, i.e., January 1, 1987, because the sale did not take place until November 18, 1987, and the owners of record, the Agais, remained as such on the effective date. It is well settled that an assignee can only be granted those rights which the assignor could give at the time of the assignment.
2. Does the fact that Romeo Planning and Development Corp. was the mortgagee of the property on January 1, 1987 give it standing to challenge respondent’s determination before FWAB?
Movant cites several cases in support of the proposition that a mortgagee must be included in the definition of "owner” where administrative action affects the value of the mortgagee’s interest in the property. However, in each of the cases cited by movant the court construed a statute not at issue here, i.e., the Environmental Conservation Law.
In Bank of Auburn v Roberts (44 NY 192), the Court of Appeals construed a statute providing for State compensation necessitated by the State enlargement of the Erie Canal. The court found that mortgagees as well as owners were entitled to share in the State’s compensation, but only after specifically finding that the "object and intent” of the enabling legislation "was to give compensation for such deterioration in value, and the damage resulting therefrom (the construction of the canal), and the parties sustaining it.” (Supra, at 201.) At bar, the Legislature could have included mortgagees and other lienholders as those classes of persons adversely affected by wetlands designations, for purposes of the new remedy provided in ECL 24-1104, but chose not to do so.
In East Riv. Sav. Bank v State of New York (266 App Div 494), the Third Department interpreted a statute known as the Grade Crossing Elimination Act, which provided for the appropriation of private lands for street widenings and recon *810 figurations. The court stated that this act made the State liable for "damage to property” not acquired, but caused by the work done to effectuate the changes. A section of the act provided that "any owner” may present a claim to the Court of Claims for the value of the property so appropriated. The Third Department decided that the phrase "any owner” was broad enough to include a mortgagee of the premises. It appears that the emphasis in the Grade Crossing Elimination Act was the damages to the value of property caused by State action, but in the statute subjudice the hardship to the owner is the mischief to be remedied.
The two other cases cited by movant both concern the rights of a mortgagee to share in the money damages awarded for State appropriation of property. It must be remembered that, unlike the above-cited cases, ECL 24-1104 does not authorize an award of damages in case of a wetlands designation; it merely provides for a new procedure for review of those designations for a certain class of landowners.
ECL 24-1104 is clearly a remedial statute, as subdivision (5) thereof specifically states. As such, it should be construed liberally (Matter of Asman v Ambach, 64 NY2d 989). On the other hand, it also grants a remedy against "sovereign irresponsibility”, i.e., the double mapping process which caused "undue hardship for many property owners” (L 1987, ch 408, § 1). Such statutes, being remedial and in derogation of the common law, are to be narrowly or literally construed. (Montalto v Westchester St. Transp. Co., 102 AD2d 816 [2d Dept].)
The language of the statute and the statement of legislative intent both point to a desire to provide a remedy only to the owner of the affected property. The second sentence of ECL 24-1104 (1) says that the DEC must provide relevant evidence upon the request of the affected landowner. The second paragraph of this section mandates FWAB to schedule a hearing within 60 days "in the case of the owner of a privately owned parcel of land” not exceeding 10,000 square feet. The statement of legislative intent specifically declares that the double mapping process "created undue hardship for many property owners, ” and that the legislation will balance the interests of preserving wetlands with the "just and proper interests of landowners” adversely affected by the DEC’S mapping process (L 1987, ch 408, § 1 [emphasis added]).
The courts ought not to legislate under the guise of interpretation of statutes (Bright Homes v Wright, 8 NY2d 157; *811 McKinney’s Cons Laws of NY, Book 1, Statutes § 73). Likewise the court may not add to a statute, and any changes in the wording of the statute ought to be made by the Legislature (Knolls Co-op. Section 1 v Hennessy, 1 Misc 2d 1001, appeal dismissed 1 AD2d 872, affd 1 AD2d 945, affd 2 NY2d 514; People ex rel. Doctors Hosp. v Sexton, 267 App Div 736, affd 295 NY 553). It is also well settled that where a law expressly describes a particular person to which it shall apply, it must be inferred that what was omitted or excluded was intended by the Legislature ("Expressio unius est exclusio alterius”; McKinney’s Cons Laws of NY, Book 1, Statutes § 240).
Consequently the court is not empowered to expand the reach of the statute under the guise of interpretation, liberal or otherwise, to include nonowners of affected properties. If the Legislature excluded mortgagees or other persons from the protection of the statute, it must be assumed that such was the intended result. If the Legislature had intended to open the appeal process to other persons, it could very well have done so by use of the appropriate language. For example, "any person” may apply for a permit to develop freshwater wetlands (ECL 24-0701 [1]; 24-0703 [1]), and "any person” may inquire of the DEC as to whether or not a specific parcel will be designated as a wetlands (ECL 24-0703 [5]).
Nor is ECL 24-1103 (1) (c) availing to petitioner. It recites that FWAB has the power to hear appeals "by any party to any proceeding before the commissioner.” This statute first created FWAB in 1975, and was enacted prior to the remedial legislation at issue. As previously indicated, the statute at issue was intended to provide an additional remedy to a more narrow class of individuals, i.e., owners of adversely affected properties. Where the Legislature enacts specific provisions directed at a particular class and a more general provision is contained in the same statute, the specific provisions prevail (People v Marrero, 71 AD2d 346; see also, St. Germain v St. Germain, 25 AD2d 568 [2d Dept]). The special and more specific statute dealing with new remedies for a certain class of individuals must be considered as an exception to the general provisions (Horowitz v Incorporated Vil. of Rosyln, 144 AD2d 639, lv dismissed 74 NY2d 835; St. Germain v St. Germain, supra).
Consequently, the statute granting a new protection to landowners only must be given effect over any other provision of ECL article 24 giving a right of review in favor of any party.
*812 3. Is there a rational basis for FWAB’s decision to deny standing to petitioners herein?
Given the state of the law as recited hereinabove, it cannot be said that the decision to deny standing to petitioners lacked a rational basis. The construction given to statutes and regulations by the agency responsible for its administration should be upheld if not irrational or unreasonable (Matter of Fineway Supermarkets v State Liq. Auth., 48 NY2d 464, 468; Matter of Howard v Wyman, 28 NY2d 434, 438; Matter of Johnson v Joy, 48 NY2d 689; Matter of Yablonsky v Perales, 136 AD2d 550, lv denied 73 NY2d 701; Matter of Allstate Ins. Co. v Libow, 106 AD2d 110, affd 65 NY2d 807).
For these reasons, this petition to declare petitioners to be lawfully entitled to a review before FWAB, and for related relief, must be denied in all respects, and dismissed in its entirety.

 There is a question as to the identity of the property. It was described as contained in block 6785, part of lot 18 in the tax maps of the City of New York, but in later correspondence it was identified in block 6790.